## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### (Alexandria Division)

|  |  |  |
|---|---|---|
| DANIEL KOLAKOWSKI, | ) | |
| | ) | Case No. 1:13-cv-01072-LO-IDD |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GORDON LYNCH, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

Pursuant to Rules 12(b)(6) and 56 of the Federal Rules of Civil Procedure, Defendants The MITRE Corporation ("MITRE" or the "Company"), Gordon Lynch, Cindy Rubin, and Robert Roche (collectively, the "Defendants") respectfully submit their Memorandum of Law in Support of their Motion to Dismiss or, in the Alternative, for Summary Judgment.

## INTRODUCTION

Plaintiff Daniel Kolakowski's Complaint in the above-captioned action seeks to establish unsettling and dangerous precedent. Plaintiff demands that this Court award significant damages – including punitive damages – and subject Defendants to the costs and burden of litigation based solely on their participation in an investigation conducted by the Federal Bureau of Investigation ("FBI"). Fourth Circuit precedent and sound public policy require that Plaintiff's Complaint be dismissed with prejudice.

1

As detailed below, after Plaintiff voluntarily left his employment with MITRE, he retained employment with Complete Building Services.  While working for Complete Building Services, he applied for a position with the FBI.  Because the position he sought would expose him to sensitive national security information, the FBI conducted a thorough background investigation of Plaintiff.  Prior to doing so, Plaintiff provided the FBI with a release that "authorized" any "sources of information pertaining to me to release such information … regardless of any previous agreement to the contrary."  FBI Background Investigation Form, SF-86-1.  That background investigation included extensive interviews of Plaintiff's current and former employers conducted by an FBI investigator.  In connection with that background investigation, as authorized by Plaintiff, the FBI investigator specifically sought and obtained interviews with MITRE employees Messrs. Lynch and Roche and Ms. Rubin (collectively, the "Individual Defendants").

MITRE is a government contractor that works closely with military and intelligence agencies on some of the most sensitive projects undertaken by the United States Government.  All of the Individual Defendants worked in MITRE's Security and Safety Department.  They all possess high-level security clearances issued by the United States Government.  They have a duty, both as employees of MITRE's Security and Safety Department and as a consequence of their security clearance, to ensure that classified information they receive from government sponsors is fully protected.

The Individual Defendants were contacted by the FBI investigator regarding Plaintiff's background check.  They did not seek him out or in any way affirmatively inject themselves into the FBI's investigation.  They complied with their civic and regulatory duties to cooperate with federal law enforcement on a matter of national security.  Plaintiff claims that they provided the FBI with negative information about him during the FBI's interviews.  He has filed defamation

2

claims against each of the Individual Defendants based solely on their alleged statements to the FBI investigator in connection with the FBI's employment background investigation of Plaintiff.

The import of this claim should not be lost on the Court.  Plaintiff seeks over $500,000 in damages from *each* of the Individual Defendants because they complied with a federal investigation initiated by his application for employment with the FBI.  In so doing, he asks this Court to declare that anyone providing negative information to an FBI investigator faces the prospect of becoming defendant to a defamation claim.  The implications of such a ruling are obvious.  Exposing individuals to claims and liability for statements made to the FBI during a background investigation would – at the very least – discourage them from providing adverse information.  As a result, the FBI's ability to investigate the security risks posed by applicants could be severely compromised.

Precedent from the Fourth Circuit and this District recognizes that Plaintiff cannot pursue these claims.  As discussed below, Defendants' statements to the FBI are absolutely privileged and cannot serve as the basis for a defamation action.  Moreover, in addition to being barred by the doctrine of absolute immunity, Plaintiff's claims are not actionable because he has failed to meet his burden of pleading that Defendants acted in bad faith and almost all of the comments alleged in the Complaint are not actionable statements of fact.  As such, Plaintiff's defamation claims alleged in Counts II, III and IV of the Complaint must be dismissed with prejudice.

Plaintiff has also brought suit against MITRE claiming that these alleged statements to the FBI were retaliatory.  In support of this claim, he alleges that the statements the Individual Defendants made to the FBI in August 2012 were made in order to retaliate against Plaintiff for filing an EEOC charge against MITRE in October 2011.  He claims this alleged retaliation violated a December 15, 2011 mediation agreement between Plaintiff, MITRE and the Equal Employment

Opportunity Commission in which MITRE agreed not to retaliate against Plaintiff in violation of

Title VII of the Civil Rights Act of 1964 and other federal anti-discrimination statutes.

This claim must also be dismissed.  As an initial matter, the claim rests upon statements

protected by federal privilege that cannot form the basis of a retaliation action.  Second, Plaintiff

has failed adequately to plead facts establishing a plausible causal nexus between his EEOC

charge and the alleged retaliatory acts or satisfying his burden of proving that those acts were

retaliatory.  Accordingly, Count I of the Complaint must be dismissed as well.

## FACTUAL BACKGROUND[1]

MITRE is an independent, non-profit corporation chartered in the State of Delaware with

the majority of its personnel stationed in Bedford, Massachusetts and McLean, Virginia.

Declaration of Gordon Lynch ("Lynch Decl.") ¶ 3.  The corporation was chartered in 1958 in

response to specific research and analysis requirements of the United States Government.  *Id*. ¶ 4.

MITRE serves as technical advisor to the Air Force, the Army, the Federal Aviation

Administration, the Internal Revenue Service, the Veterans Administration, the Department of

Homeland Security, and other military, national security, intelligence and civilian agencies.  *Id*. ¶

5.

MITRE currently employs approximately 7,200 employees and operates multiple

Federally Funded Research and Development Centers ("FFRDCs"), from which it derives nearly

all of its revenue.  *Id*. ¶ 6.  The majority of MITRE's employees are scientists and engineers who

---

[1]  The facts asserted in this memorandum taken from Plaintiff's Complaint are assumed to be true
only for purposes of Defendants' motion to dismiss and for summary judgment.  Pursuant to Local
Civil Rule 56 and Federal Rule of Civil Procedure 56, the uncontested material facts relevant to
this dispute are set forth in separately numbered paragraphs in Defendants' Local Rule 56
Statement of Undisputed Facts, submitted herewith.

provide systems engineering, information services, and technical advice to the Company's government sponsors.  *Id.* ¶ 7.

Because MITRE works with military, intelligence and national security agencies on extremely sensitive projects, MITRE employees with security clearances are provided access to classified government information.  *Id.* ¶ 8.  Accordingly, MITRE and its employees are subject to the rigorous requirements of the National Industrial Security Program Operating Manual (the "NISPOM").  *See* Declaration of Connie Bertram ("Bertram Decl.") Ex. F (DoD 5220.22-M); Lynch Decl. ¶ 8.  The Department of Defense issued the NISPOM as part of the National Industrial Security Program, established by Executive Order 12829 "to safeguard classified information released to contractors on government contracts."  *See Bridge Tech. Corp. v. Kenjya Group, Inc.*, 2004 WL 1318884, at *1 n.5 (Va. Cir. Ct. Apr. 20, 2004).  The NISPOM "prescribes the requirements, restrictions, and other safeguards to prevent unauthorized disclosure of classified information," and "controls the authorized disclosure of classified information released by U.S. Government Executive Branch Departments and Agencies to their contractors."  Bertram Decl. Ex. F (DoD 5220.22-M § 1-100).

It also "prescribes the procedures, requirements, restrictions, and other safeguards to protect special classes of classified information."  *Id.*  The NISPOM requires government contractors, like MITRE, to "report adverse information coming to their attention concerning any of their cleared employees."  *Id*. (DoD 5220.22-M § 1-302(a)).  This requirement extends to former employees.  *Id.*  In addition, the manual expressly requires government contractors, like MITRE, to "cooperate with Federal agencies and their officially credentialed representatives during … personnel security investigations of present or former employees…."  *Id.* (DoD 5220.22-M § 1-204).

Plaintiff was employed by MITRE as a security systems engineer in its Security and Safety Department from November 2009 until June 2011.  Compl. ¶ 8; Lynch Decl. ¶ 9.  MITRE's Security and Safety Department is tasked with ensuring that MITRE's facilities, as well as the FFRDCs it operates, comply with the NISPOM so that sensitive classified information the United States Government shares with MITRE is protected.  Lynch Decl. ¶ 10.  During his employment with MITRE Plaintiff had a high-level government clearance.  *Id*. ¶ 11.  Plaintiff's direct supervisor for part of the time he was employed by MITRE was Defendant Cindy Rubin.  Compl. ¶ 12; Declaration of Cindy Rubin ("Rubin Decl.") ¶ 3.  Ms. Rubin's supervisor was Defendant Gordon Lynch.  Compl. ¶ 13.  Defendant Robert Roche was a MITRE employee in Plaintiff's department who supervised his work.  *Id*. ¶ 14.  All three of these Defendants had high-level federal government clearances.  Lynch Decl. ¶ 11; Rubin Decl. ¶ 4; Declaration of Robert Roche ("Roche Decl.") ¶ 3.

Plaintiff resigned from his employment with MITRE in June 2011.  Compl. ¶ 8.  Months later, he filed a charge of discrimination against MITRE with the Equal Employment Opportunity Commission ("EEOC").[2]  Bertram Decl. Ex. A.  In his EEOC charge, Plaintiff claimed that he was harassed for being of Polish ancestry, and retaliated against for complaining about the alleged harassment.  *Id*. Ex. A.  On December 15, 2011, the EEOC hosted a mediation to attempt to resolve his charge.  *See* Compl. Ex. A; Compl. ¶¶ 8-11.  At the mediation, the parties settled Plaintiff's claims against MITRE.  Compl. ¶¶ 10-11; *id*. Ex. A.  Plaintiff, MITRE and the EEOC entered into a Mediation Settlement Agreement on December 15, 2011.  *Id*. Ex. A.  In addition, Plaintiff and

---

[2]  Plaintiff alleges that he filed his charge with the EEOC prior to resigning from MITRE, and that his resignation was "in accordance" with the settlement of his charge.  Compl. ¶¶ 9, 11.  Plaintiff's allegations are inaccurate.  He filed his charge on October 20, 2011, which was four months after his resignation.  Bertram Decl. ¶ 5, Ex. A.

MITRE entered into a separate settlement agreement to which the EEOC was not a party.  *Id.* ¶ 5A; Bertram Decl. Ex. B.

After resigning from MITRE, Plaintiff obtained employment with Complete Building Services.  Bertram Decl. ¶ 3.  While he was working for Complete Building Services, he applied for employment with the Federal Bureau of Investigation (the "FBI").  Compl. ¶ 15.  As the FBI makes clear, "[t]he mission of the FBI is vital to the safety and security of our nation and its citizens.  Often, our work is very sensitive in nature.  Therefore, all FBI positions require at least a Top Secret Security Clearance."  Federal Bureau of Investigations, https://fbijobs.gov/5.asp (last visited Sep. 4, 2013); Bertram Decl. Ex. C.  The FBI informs candidates that to obtain the clearance, "the FBI will initiate an intensive background investigation that you must pass before you can join the FBI" which includes "extensive interviews with former and current colleagues."  *Id.*

Once initially selected for a position, a candidate for employment with the FBI must complete the SF-86 form, "a standard background investigation form used by the entire U.S. Intelligence Community."  Federal Bureau of Investigations, https://fbijobs.gov/54.asp (last visited Sep. 4, 2013); Bertram Decl. Ex. D.  The SF-86 includes an "Authorization for Release of Information" that must be completed by the applicant.  Federal Bureau of Investigations, https://www.fbijobs.gov/employment/08.pdf (last visited Sep. 4, 2013); *see also* Bertram Decl. Ex. E.  By signing the authorization, the applicant "**Authorize[s]** custodians of records and other sources of information pertaining to me to release such information upon request of the investigator, special agent, or other duly accredited representative of any Federal agency authorized above regardless of any previous agreement to the contrary."  *Id.* at SF-86-1 (emphasis in original).

As part of Plaintiff's application process, Plaintiff authorized and was subjected to this "thorough background check" process. Compl. ¶ 16. This included "extensive interviews with the plaintiff's former supervisors and managers in MITRE's Security and Safety Department, including" Defendants Gordon Lynch, Cindy Rubin and Robert Roche (collectively, the "Individual Defendants"). *Id.* An FBI investigator contacted Gordon Lynch to inform him of the background check and to coordinate his interviews of the Individual Defendants. Lynch Decl. ¶ 12. Each Individual Defendant was interviewed by the FBI investigator on August 29, 2012 concerning Plaintiff and his application for employment with the FBI. Compl. ¶¶ 16-19; Bertram Decl. ¶ 4.

Plaintiff's application for employment with the FBI was rejected. Compl. ¶ 26. Plaintiff subsequently filed the above-captioned action in the Circuit Court of Fairfax County. In his Complaint, Plaintiff attempts to assert defamation claims against the Individual Defendants. *Id.* Counts II-IV. He claims that certain statements they made to the FBI resulted in the FBI rejecting his application for employment. *Id.* ¶ 26. Plaintiff also brings a claim against MITRE, claiming that the Individual Defendants made the alleged statements to the FBI in retaliation for his filing a charge with the EEOC in October 2011, four months after he resigned from his employment with MITRE and ten months before the FBI interviewed the Individual Defendants in connection with Plaintiff's application for employment. Plaintiff claims that this conduct constituted a breach of MITRE's commitments under the settlement agreement brokered by the EEOC. *Id.* ¶¶ 30, 34, 37. All of Plaintiff's claims are based solely on statements allegedly made by the Individual Defendants to the FBI investigator as part of the background investigation Plaintiff initiated and authorized in connection with his application for employment with the FBI. *Id.* ¶¶ 16-19.

On August 28, 2013, Defendants properly removed Plaintiff's Complaint to this Court.

8

**LEGAL STANDARD**

Defendants' Motion is brought pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For a complaint to survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

A plaintiff must therefore plead "more than a sheer possibility that a defendant has acted unlawfully," *id.*, "labels and conclusions," or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555. A complaint does not "suffice if it tenders naked assertions devoid of further factual enhancement", or offers only an "unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). The complaint must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. This analysis results in a "two-pronged approach," under which a court first identifies the factual allegations entitled to an assumption of truth, and then determines "whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

Although the Court must assume the truth of the facts alleged in the Complaint for purposes of the motion, it is not bound by the "legal conclusions drawn from the facts" nor must it "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Markets, Inc. v. J.D. Assocs Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000).

Defendants have submitted limited materials not included in the Complaint in support of their arguments to dismiss Plaintiff's defamation claims. Accordingly, for those claims, unless the

Court determines it does not need to consider the additional materials, Defendants' motion should "be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Summary judgment under Rule 56 is appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and on which that party bears the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). In reviewing a summary judgment motion, the court must draw all justifiable inference in favor of the non-moving party. *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835 (4th Cir. 1992). However, a plaintiff may not defeat summary judgment merely with conclusory allegations of discrimination or retaliation; rather, a party opposing summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Celotex Corp.,* 477 U.S. at 324; *see also Mobley v. Advance Stores Co.*, 842 F. Supp. 2d 886, 888 (E.D. Va. 2012) ("If the nonmovant fails to identify specific facts that demonstrate a genuine and material issue for trial, then the court will grant summary judgment to prevent 'factually unsupported claims and defenses' from proceeding to trial.") (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)). Thus, Plaintiff may not rest upon mere allegations or vague statements that the employment actions of which he complains were unlawful, but must set forth sufficient evidence that would permit a rational trier of fact to reach that conclusion. *Id.*

## ARGUMENT

### I.   Plaintiff's Defamation Claims Must Be Dismissed

In Counts II, III and IV of the Complaint, Plaintiff brings defamation *per se* claims against Defendants Lynch, Rubin and Roche (the "Individual Defendants"). Compl. at 6-8. Those claims

must be dismissed because the statements alleged to have been made are absolutely privileged from state tort liability.  In addition, Plaintiff's defamation claims must be dismissed because he has failed to plead sufficient facts to rebut the presumption that the statements were made in good faith and many of the alleged statements are not actionable.

### A.      Plaintiff's Defamation Claims Are Barred By Absolute Immunity

Plaintiff contends that the allegedly defamatory statements made by the Individual Defendants were made during "extensive interviews" conducted by an FBI investigator as part of a "thorough background check of plaintiff."  Compl. ¶ 16; *see also id.* ¶¶ 17-19, 42-43, Count III ¶¶ 2-3, Count IV ¶¶ 2-3.  As discussed above, this background check was initiated and authorized by Plaintiff's application for employment with the FBI.  *Id.* ¶ 15; *see also supra* at 7-8.  Plaintiff's defamation claims, which are based solely on the Individual Defendants' alleged statements to the FBI, are barred by no less than three different absolute immunity doctrines.

### 1.      Defendants Are Shielded By Government Contractor Investigation Immunity

It is well-established that absolute immunity applies to certain statements made by federal contractors and their employees in response to government inquiries.  *See Mangold v. Analytic Services, Inc.*, 77 F.3d 1442, 1447-49 (4th Cir. 1996).  The Fourth Circuit has held that absolute immunity applies "to shield statements and information, whether truthful or not, given by a government contractor and its employees *in response to queries* by government investigators engaged in an official investigation."  *Id.* at 1449 (emphasis in original).  The *Mangold* court recognized that in such circumstances the principles supporting immunity for government employees apply with equal force to government contractors and their employees:

> If government employees cooperating in such investigations are left exposed to
> lawsuits filed by those under investigation, they might be reluctant to cooperate,

> even if they were eyewitnesses to improper conduct.  Equally as important, in the absence of such protection, they might distort information in an effort to avoid exposure to tort liability.
>
> . . .
>
> [T]o expose private government contractors who are responding to and cooperating with such investigations to the risk of state tort claims would chill the investigative effort to the same extent that exposing cooperating government employees would. Ultimately, to allow such tort liability, whether against government employees or private contractors, would tend to make the government less efficient.

*Id*. at 1447.  The *Mangold* court found that the value of government investigations "outweighs the interest of affording individuals redress against persons for participating in the investigations for wrongful actions."  *Id*.

The facts as alleged in Plaintiff's Complaint fall squarely within the immunity doctrine articulated by the *Mangold* court, as demonstrated by this Court's decision in *Twigg v. Triple Canopy, Inc.*, 2010 U.S. Dist. LEXIS 53750 (E.D. Va. June 2, 2010).  There, Triple Canopy, a government contractor, fired one of its employees.  *Id*. at *3.  The Department of State later contacted Triple Canopy to inquire about the termination.  *Id*.  In response to the request, Triple Canopy sent the Department of State a letter in which it detailed the bases for the termination.  *Id*.  Triple Canopy explained that the plaintiff had ignored established practices and direction from superiors, misled co-workers, undermined an investigation into unauthorized alcohol consumption, and failed to address concerns about race discrimination.  *Id*. at **3-4.

The terminated employee sued, contending that the statements were false.  He brought various claims against Triple Canopy, including defamation *per se*.  *Id*. at **4-5.  In considering Triple Canopy's motion to dismiss, the *Twigg* court determined that the statements were in response to inquiries made in connection with a government investigation.  *Id*. at **18-20.  As such, it determined that "[t]he conduct of the Defendant here certainly falls into the type of conduct

that is protected from state tort liability for defamation" based on the *Mangold* doctrine of absolute immunity, and dismissed the claim. *Id*. at *20.

Just as in *Twigg*, the Individual Defendants are employees of a government contractor. The statements challenged by Plaintiff were made in response to an inquiry from a federal government agency as part of a government investigation – one that in this instance **Plaintiff initiated and authorized**. Under *Mangold*, their statements are subject to absolute immunity and cannot form the basis of a defamation claim. *Mangold*, 77 F.3d at 1449. As such, Plaintiff's defamation claims must be dismissed.

### 2. Plaintiff's Defamation Claims Are Absolutely Barred By MITRE's NISPOM's Obligations

As a federal government contractor that receives highly classified information from the federal government, MITRE is subject to the NISPOM. *See* Bertram Decl. Ex. F (DoD 5220.22-M § 1-102). As discussed above, the NISPOM requires, among other things, that MITRE: (1) "cooperate with Federal agencies and their officially credentialed representatives during … personnel security investigations of present or former employees and others;" and (2) "report adverse information coming to their attention concerning any of their cleared employees," including former employees. *Id*. (DoD 5220.22-M §§ 1-204, 1-302(a)).

Accordingly, the NISPOM required MITRE and the Individual Defendants to cooperate fully with the FBI investigator in his background investigation of Plaintiff. Thus, the statements they made to that investigator are absolutely privileged. The Fourth Circuit has held that "an action for libel will not lie in the circumstances against a private party fulfilling its governmentally imposed duty to inform." *Becker v. Philco Corp.*, 372 F.2d 771, 776 (4th Cir. 1967). In reaching this conclusion, the *Becker* court relied on the fact the government contractor defendant was

required by Department of Defense Industrial Security Manual, a predecessor to the NISPOM, to report compromises of classified information. *Id*. at 773-74.[3]

More recently other courts have come to the same conclusion relying on NISPOM or its predecessors. In *Bridge Tech. Corp. v. Kenjya Group, Inc.,* the Circuit Court of Virginia, Fairfax County dismissed a defamation claim brought by a former employee against a defense contractor. 2004 WL 1318884, at *4. The court held, based in part on NISPOM requirements, that the government contractor "cannot be held answerable for the alleged falsity and defamation contained in its report to the [National Security Agency] made pursuant to federal regulations. Courts have recognized the importance of allowing government officials, including government contractors, to freely exercise their duties unembarrassed by the fear of damage suits." *Id.* at *3 (internal quotation marks omitted). To the extent the report contained "maliciously false libel," the court stated that "it is the function of the internal investigatory process to uncover such statements and discredit them without further dissemination." *Id.*

The court in *Gulati v. Zuckerman*, 723 F. Supp. 353, 358 (E.D. Pa. 1989) also held that statements to the government covered by the NISPOM are absolutely privileged. The *Gulati* court recognized the practical concerns mandating immunity for defense contractors making reports to the federal government:

> A grant of immunity is clearly justified in this case. The maintenance of the necessary level of security throughout our vast defense industry requires a high level of cooperation by defense contractors. Contractors have the duty to report all manner of potentially damaging information about their employees to the appropriate federal authorities. They must be able to do this free of the fear of expensive litigation. Self-censorship in adverse information reporting would be

---

[3] The *Becker* case is referenced in the NISPOM to assure contractors that "a contractor is not liable for defamation of an employee because of reports made to the Government under the requirements of this Manual and its previous versions." Bertram Decl. Ex. F (DoD 5220.22-M § 1-302(a) note).

> extremely detrimental to the federal goal of ferreting out security risks in the defense industry.  It is the province of federal security investigators, not of reporting contractors, to sort out valid reports of employee misbehavior from unfounded fictions.

*Id*. at 358; *see also Missionist Group, Inc. v. Filak*, 2010 WL 4974549, at *2 (D.N.J. Dec. 2, 2010) (granting motion to dismiss defamation claim, finding comments made by defense contractor concerning criminal activity of employee covered by NISPOM requirements and therefore absolutely privileged); *Montgomery v. Sanders*, 2008 WL 4546262, at *4 (S.D. Ohio Aug. 18, 2008) ("Defense contractors and their security personnel cannot be sued for making reports to the United States about individuals who have access to our nation's classified information.").

MITRE is obligated by the NISPOM to cooperate with FBI investigators engaged in background screening investigations.  Bertram Decl. Ex. F (DoD 5220.22-M § 1-204).  As such, the Individual Defendants, as its employees, were required to participate in the FBI's background investigation of Plaintiff when contacted by the FBI investigator.  Statements made during the investigation are therefore absolutely privileged and cannot be the basis of a claim for defamation. *See, e.g., Becker*, 372 F.2d at 775.  For these reasons, Plaintiff's defamation claims must be dismissed.

### 3.   Statements Made In Response To An FBI Inquiry Are Absolutely Privileged

Even putting aside MITRE's government contractor status, the statements by the Individual Defendants in response to questioning by the FBI investigator are absolutely protected and cannot be used as a basis for a defamation action.  As discussed above, Plaintiff applied for employment with the FBI.  The position required Top Secret security clearance.  The FBI thereafter commenced an investigation into Plaintiff's background – an investigation initiated and

authorized by Plaintiff.  It was in the course of this background investigation that the Individual

Defendants were approached by an FBI investigator and agreed to be interviewed.

Plaintiff seeks to impose liability on the Individual Defendants for their participation in this

background investigation.  He cannot do so.  In addition to the other bases for absolute immunity

set forth above, the Individual Defendants' statements to the FBI investigator are absolutely

protected as statements made in response to an FBI inquiry.

The protected status of statements made to the FBI was recognized by the court in *Shabazz*

*v. PYA Monarch, LLC*, 271 F. Supp. 2d 797 (E.D. Va. 2003).  In that case, the plaintiff's employer

was contacted by two FBI agents investigating reports that plaintiff had made statements to

customers regarding the September 11, 2001 terrorist attacks.  *Id*. at 805.  Plaintiff then sued his

former employer for making statements to the FBI he claimed were defamatory.  *Id*.  The former

employer asserted that "any statements made by it or its employees in response to an FBI

investigation are privileged and may not be the basis of a defamation lawsuit."  *Id*.

The *Shabazz* court agreed.  Finding that the *Mangold* and *Becker* lines of immunity

inapplicable because the defendant was not a government contractor, the court found the principles

underlying the *Mangold* decision mandated application of absolute immunity to the statements.[4]

The *Shabazz* court held that where a private person complies with a request by the FBI to provide

information about a particular person, the statements made in response "are protected by immunity

and cannot be the basis of the plaintiff's defamation action."  *Id*. at 806.

---

[4]  The Court also cited to *Holmes v. Eddy*, 341 F.2d 477, 480 (4th Cir. 1965) in reaching its
decision.  *Shabazz*, 271 F. Supp. 2d at 806.  There, the Fourth Circuit found that statements made
to the Securities and Exchange Commission by a private person for the purpose of initiating a
prosecution were protected by absolute immunity.  *Id*.

The facts and reasoning of the *Shabazz* decision apply with equal force here. In this case, the Individual Defendants were approached by an FBI investigator to provide information related to Plaintiff for purposes of a security clearance background check. The purpose of the background check was to ensure that Plaintiff would not pose a risk to the national security interests of the United States if the FBI hired him. The Individual Defendants complied with their duty as American citizens to cooperate with law enforcement in this important investigation.

The danger presented by Plaintiff's attempts to subject the Individual Defendants to liability for their cooperation with the FBI demonstrates the wisdom of the *Shabazz* court's decision. Private individuals asked to provide information to the FBI concerning an issue of national security should not have to worry that they may later face a defamation lawsuit. Failing to provide such individuals absolute immunity would discourage them from being completely candid with investigating officials, potentially jeopardizing the country's national security.

It is not difficult to imagine a situation where an individual who has had a contentious relationship with a former co-worker is later asked to provide information about that person to the FBI or another law enforcement agency. The individual may have important information to share with the law enforcement official about the former co-worker's suitability for a sensitive position in the government. That individual should not be muzzled by fear that a statement he makes will later be used against him in a state tort lawsuit. The fact that the individual is confident that the statements are true and not motivated by malice will provide little comfort. Absent absolute immunity, he risks spending years and significant resources litigating those issues in order to establish that the statements made were not actionable.

17

For these reasons, the Court should follow the *Shabazz* court's analysis and find the

Individual Defendants' statements absolutely privileged.[5]

**B.     Plaintiff's Defamation Claims Must Be Dismissed Because He Has Failed to Meet His Burden Of Pleading Bad Faith**

Although Plaintiff's defamation claims are barred by absolute immunity, even under

qualified privilege standards, they must be dismissed because Plaintiff failed to allege facts with

sufficient particularity to overcome the presumption of good faith statutorily accorded under

Virginia law.

The statements of which Plaintiff complains are subject to the standard set forth in Va.

Code Ann. § 8.01-46.1.  Section 8.01-46.1(A) states that:

> Any employer who, upon request by a person's prospective or current employer, furnishes information about that person's professional conduct, reasons for separation or job performance, including, but not limited to, information contained in any written performance evaluations, ***shall be immune from civil liability for furnishing such information***, provided that the employer is not acting in bad faith. ***An employer shall be presumed to be acting in good faith***.  The presumption of good faith shall be rebutted if it is shown by clear and convincing evidence that the employer disclosed such information with knowledge that it was false, or with reckless disregard for whether it is false or not, or with the intent to deliberately mislead.

Va. Code Ann. § 8.01-46.1(A) (2006) (emphasis added).  Thus, in order to pursue his

defamation claim, Plaintiff must rebut the presumption that Defendants acted in good faith

with clear and convincing evidence.  *Id.*

To survive a motion to dismiss, Plaintiff must plead facts sufficient to show that he

can meet this burden.  *Cf. Echtenkamp v. Loudon County Pub. Schs.*, 263 F. Supp. 2d 1043,

---

[5] Plaintiff may contend that making statements to the FBI absolutely privileged will give people a free license to make malicious, false statements.  This is not true.  Making a false statement to a federal agent is a criminal offense, subject to imprisonment for up to eight years.  *See* 18 U.S.C. §

1062 (E.D. Va. 2003) (noting that "in order to state a claim for defamation, plaintiff must allege facts sufficient ultimately to" overcome defendant's qualified privilege).  Plaintiff, however, fails to allege ***any facts*** to rebut the Individual Defendants' presumption of good faith.  *See* Va. Code Ann. § 8.01-46.1(A) (2006).

Instead, he offers nothing more in his Complaint than formulaic recitations of the elements of a defamation claim.  *See, e.g.,* Compl. ¶ 21 (alleging "[t]he statements made by each of the defendants were untrue and known by the defendants to be untrue at the time that the statements were made"); *id.* ¶ 32 ("defendants had no good faith basis for making the false statements…"); *id.* ¶ 42 ("statements made by Rubin to the FBI about plaintiff were false and known by Rubin to be false at the time that she made them").  These allegations are plainly insufficient to meet the requirements of Rule 8 of the Federal Rules. *Twombly*, 550 U.S. at 555-56; *see also Ortiz v. Panera Bread Co.*, 2011 WL 3353432, at *4-5 (E.D. Va. Aug. 2, 2011) (granting motion to dismiss where plaintiff pled only conclusory allegations regarding motive and malicious intent necessary to overcome qualified privilege); *Wynn v. Wachovia Bank, N.A.*, 2009 WL 1255464, at **3-4 (E.D. Va. May 6, 2009) (granting motion to dismiss where plaintiff failed to meet common law malice pleading burden by "merely conclud[ing] the statements were made 'willfully, knowingly, and falsely,' 'maliciously,' and 'recklessly.'").

As such, Plaintiff's defamation claims must be dismissed.

---

1001.  Any argument that such a penalty is not a sufficient deterrent to those inclined to lie to federal agents is simply not credible.

### C.   Statements Alleged To Be Defamatory Are Non-Actionable Opinions

Many of the comments the Individual Defendants allegedly made to the FBI, in addition to being absolutely privileged, are non-actionable statements of opinion.  Therefore, those statements cannot serve as the basis for a defamation claim.

### 1.   Statements About Plaintiff's Absences Are Non-Actionable Subjective Opinions

Plaintiff alleges that Defendants Lynch and Rubin made statements to the FBI investigator about his absences from work.  Specifically, Plaintiff alleges that Defendant Lynch told the FBI investigator that Plaintiff "took excessive days off due to family sickness" and that Defendant Rubin told the FBI investigator that Plaintiff "was absent a lot."  Compl. ¶¶ 17, 18.  Neither of these statements is actionable because they are reflective of the speakers' own subjective opinions.

"[S]tatements of opinion are generally not actionable because such statements cannot be objectively characterized as true or false. . . ."  *Jordan v. Kollman*, 269 Va. 569, 576 (2005).  An expression of opinion is a statement that is "relative in nature and depend[s] largely upon the speaker's viewpoint. . . ."  *Government Micro Res., Inc. v. Jackson,* 271 Va. 29, 40 (2006) (internal quotations omitted).  Thus, "speech that does not contain a provably false factual connotation is sometimes referred to as 'pure expressions of opinion' and cannot normally form the basis of a claim for defamation."  *WJLA-TV v. Levin*, 264 Va. 140, 156 (2002).

Courts in Virginia faced with similar expressions of opinion have not hesitated to dismiss a plaintiff's defamation claims.  In *Chaves v. Johnson*, for example, the plaintiff brought defamation claims against a competitor who submitted a letter to the city council characterizing him as inexperienced and as charging "excessive fees."  230 Va. 112, 117 (1985).  The Supreme Court of Virginia affirmed the trial court's decision setting aside the jury's verdict for the plaintiff.  The

*Chavez* court held that those statements were not actionable defamatory statements because they were "mere statements of opinion." *Id.* at 118.  The Supreme Court reasoned that "a charge that professional fees are excessive is largely dependent upon the speaker's viewpoint." *Id.* at 119

Similarly, the court in *Cook, Heyward, Lee, Hopper, & Feehan v. Trump Virginia Acquisitions, LLC*, dismissed plaintiff's defamation claims because the defendant's statements that he was "very, very disappointed" with the quality of plaintiff's work and was forced to "redo their work multiple times in-house" were not actionable because they represented subjective views and relative concepts.  2012 WL 1898616, at **3-4 (E.D. Va. May 23, 2012); *see also Taylor v. CNA Corp.*, 2010 WL 3430911, at *15 (E.D. Va. Aug. 27, 2010) (coworkers' statements that plaintiff was "intimidating" and "bullying" not actionable defamation); *Marroquin v. Exxon Mobil Corp.*, 2009 WL 1529455, at *9 (E.D. Va. May 27, 2009) (statements made by former employer that the plaintiff's conduct was "very bad" or "inappropriate" were expressions of "opinion of the scope and magnitude of Plaintiff's wrongdoing" that could not form the basis of a defamation claim); *Lamb v. Weiss*, 2003 WL 23162338, at **5-6 (Va. Cir. Ct. July 9, 2003) (sustaining demurrer on defamation claims where statements asserting plaintiff "screwed up" and was "incompetent" were non-actionable expressions of opinion).

Both of the statements Plaintiff alleges were made with respect to his absences are precisely the types of expressions of opinion that Virginia courts have consistently held do not rise to the level of defamation.  Defendants' alleged sentiments that Plaintiff's absences were "excessive" (or "a lot") are subjective value judgments dependent on each speaker's own viewpoint as to the acceptable number of absences an employee in Plaintiff's position should take. They are – at most – "expressions of opinion of the scope and magnitude of Plaintiff's

wrongdoing" that cannot form the basis of a defamation claim. *Marroquin*, 2009 WL1529455, at *9.

**2.     Statements About Plaintiff's Exaggeration Of Work Performed Is Not Actionable Defamation**

Plaintiff also alleges that Defendants Lynch and Roche told the FBI investigator that he "would exaggerate" or "had exaggerated" the amount of work he performed at MITRE. Compl. ¶¶ 17, 19. He claims these statements are defamatory. However, these vague comments cannot constitute actionable defamation because they are statements of opinion or subjective dissatisfaction entirely dependent on the speakers' own viewpoints. *See supra* at 20-21. Indeed, statements suggesting that Plaintiff overstated the amount of work he performed largely "depend[] for [their] import" on the impact Plaintiff's statements about the volume of work he performed had on Defendants Lynch and Roche relative to their individual perceptions of how much work Plaintiff actually performed. *Chaves*, 230 Va. at 119.  As such, they also cannot constitute the basis of a defamation claim. *Id*.

**II.    Plaintiff's Breach Of Contract Claim Against MITRE Must Be Dismissed**

In Count I of his Complaint, Plaintiff contends that MITRE breached its contractual obligation not to retaliate against Plaintiff for filing his EEOC charge against the Company. Comp. ¶¶ 34, 37. Specifically, he contends that the statements allegedly made by the Individual Defendants were made "for the sole purpose of retaliating against the plaintiff for having filed an EEOC complaint against" MITRE, thereby breaching MITRE's anti-retaliation commitment. *Id*. ¶ 34.

In order for Plaintiff to prevail on his breach of contract claim, he must show MITRE retaliated against him for filing his EEOC charge. Because Plaintiff's claim is based on a breach of

an EEOC settlement agreement, it arises under Title VII of the Civil Rights Act of 1964. *See, e.g.,*
*Eatmon v. Bristol Steel & Iron Works, Inc.,* 769 F.2d 1503, 1513 (11th Cir. 1985); *see also* Defs.'
Notice of Removal ¶¶ 4-6 [Dkt. No. 1].  As such, the retaliation standards of Title VII apply to his
claim.

To establish a *prima facie* case of retaliation, Plaintiff must show that:  (1) he engaged in
protected activity; (2) MITRE took an adverse employment action against him; and (3) the
protected activity was the "but for" cause of the adverse action.  *University of Tex. Southwestern*
*Med. Ctr v. Nassar*, 133 S. Ct. 2517, 2521 (2013); *Hopkins v. Baltimore Gas & Elec. Co.*, 77 F.3d
745, 754 (4th Cir. 1996).  If Plaintiff satisfies his burden of proving a *prima facie* case, the burden
shifts to MITRE to "proffer evidence of a legitimate, non-discriminatory reason for taking the
adverse employment action."  *Matvia v. Bald Head Island Mgmt., Inc*., 259 F.3d 261, 271 (4th Cir.
2001).  The burden then shifts back to Plaintiff to prove that the articulated reason was a mere
pretext for retaliation.  *Id.*

Plaintiff's breach of contract/retaliation claim must be dismissed for two reasons.  First, a
retaliation claim cannot be based upon communications that are absolutely privileged under
federal law.  Second, Plaintiff has failed to plead the essential elements of a retaliation claim.

**A.      Plaintiff's Retaliation Claim Must Be Dismissed Because It Is Based On**
**Statements That Are Absolutely Privileged**

As discussed in detail above, the statements made by the Individual Defendants on which
Count I of Plaintiff's Complaint is based are absolutely privileged.  As such, they cannot form the
basis of Plaintiff's retaliation claim.  It is axiomatic that if the statements the Individual
Defendants made to the FBI were absolutely protected by federal law, they cannot be used to
impose liability upon MITRE under the guise of a retaliation claim.  *See, e.g., Frederick v. Reed*

*Smith Shaw & McClay*, 1994 WL 57212, at *4 (E.D. Pa. Feb. 18, 1994) (rejecting argument that privileged statements made at administrative proceeding can be basis of Title VII retaliation claim).

For example, in *Grayer v. Welch*, a former police officer brought claims against her former employer, including a claim for retaliation.  2011 U.S. Dist. LEXIS 113118, at *38 (N.D. Ill. Sept. 30, 2011).  The *Grayer* plaintiff based her retaliation claim on a number of alleged acts by defendants, including their providing "false statements."  *Id*. at *39.  In ruling on the defendants' motion to dismiss, the *Grayer* court dismissed the retaliation claim.  With respect to the false testimony component of Plaintiff's retaliation claim, the court noted that "providing false testimony cannot serve as the basis for a retaliation claim because such communications are privileged under federal law."  *Id*. at *40 (citing *Briscoe v. LaHue*, 663 F.2d 713, 720-21 (7th Cir. 1981)).

For the same reasons, Plaintiff's breach of contract/retaliation claim cannot stand.  That claim is based on actions which, for reasons explained above, are absolutely privileged under federal law.  Accordingly, the Court should dismiss Count I of Plaintiff's Complaint.

### B.    Count I Must Be Dismissed Because Plaintiff Has Failed To Meet His Pleading Burden

In addition to its improper dependence on absolutely privileged statements, Count I must be dismissed because Plaintiff failed adequately to plead the elements of his prima facie case.  Specifically, Plaintiff has failed to plead facts establishing that his EEOC charge was the "but for" cause of the alleged statements made by the Individual Defendants to the FBI investigator.  That failure mandates that Count I be dismissed with prejudice.

24

Plaintiff contends that the Individual Defendants made false statements to the FBI in connection with its investigation into his background.  Compl. ¶¶ 31-32.  But, he fails to allege any facts plausibly supporting his claim that they made the statements in order to retaliate against him for filing an EEOC charge.  The only allegation in the Complaint that addresses the causation prong of Plaintiff's prima facie case is found in Paragraph 34 of the Complaint.  There, Plaintiff alleges that the Individual Defendants made the statements "for the sole purpose of retaliating against the plaintiff for having filed an EEOC complaint against" MITRE.  *Id.* ¶ 34.

But this allegation consists of nothing more than bare "labels and conclusions," which are insufficient to plead a claim.  *Twombly,* 550 U.S. at 555-56.  Plaintiff pleads no facts supporting his theory.  *See generally* Compl.  For example, Plaintiff does not indicate why his EEOC charge would motivate the Individual Defendants to risk imprisonment – and the high-level security clearances required for their livelihoods – and lie to a federal investigator.  *See* 18 U.S.C. § 1001.

Moreover, Plaintiff does not offer any facts that would explain why they would retaliate against Plaintiff ten months after he filed his charge and eight months after it had been resolved by mediation.  This passage of time is sufficient alone to break the causal chain under Fourth Circuit precedent.  *See, e.g., Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 657 (4th Cir. 1998) ("A lengthy time lapse … negates any inference that a causal connection exists."); *King v. Rumsfeld*, 328 F.3d 145, 151 n.5 (4th Cir. 2003) (finding a delay of two months and two weeks to be "sufficiently long as to weaken significantly the inference of causation between the two events."); *Johnson v. Scott County Sch. Bd.*, 2012 U.S. Dist. LEXIS 106117, at \*\*7-8 (W.D. Va. July 31, 2012) (dismissing with prejudice retaliation claim where plaintiff alleged the two events "occurred within the same school year," as complaint provided "no indication that Johnson's demotion very closely followed her report"); *Parrott v. Cheney*, 748 F. Supp. 312, 318

(D. Md. 1989) (a period of less than five months was insufficient to prove a causal connection

between alleged protected activity and adverse action), *aff'd*, 914 F. 2d 248 (4th Cir. 1990).

Moreover, Plaintiff does not even allege that the Individual Defendants had knowledge of

the EEOC charge.  This omission is in and of itself sufficient to compel the dismissal of Plaintiff's

claim because, as the Fourth Circuit has repeatedly held, one cannot retaliate against someone for

protected activity of which they are unaware.  *See, e.g., Bonds v. Leavitt*, 629 F.3d 369, 382-83

(4th Cir. 2011) (recognizing the absolute necessity of knowledge of the protected activity to

establish a causal connection between protected activity and adverse employment action for Title

VII retaliation claims ); *Baqir v. Principi,* 434 F.3d 733, 748 (4th Cir 2006) (plaintiff "must be able

to show that the relevant [employer] officials [were] aware of [the protected activity] at the time

the alleged retaliation occurred").  As such, Plaintiff was required to "allege that the … person

principally responsible for the adverse employment action … had knowledge that the plaintiff

engaged in protected activity."  *Clarke v. Petersburg City Pub. Sch*., 2012 U.S. Dist. LEXIS

153004, at **11-12 (E.D. Va. Oct. 24, 2012) (internal quotation marks omitted).  Plaintiff's failure

to do so means that he has "failed to plead a prima facie case of retaliation," and his claim must be

dismissed.  *Id*. at *12 (dismissing with prejudice retaliation claim where plaintiff's complaint

"stat[ed] only that 'retaliation likely occurred' because of the 'pending litigation.'").[6]

---

[6] *See also Khalik v. United Air Lines*, 671 F.3d 1188, 1194 (10th Cir. 2012) (affirming dismissal of
retaliation claim where complaint alleged no nexus between protected activity and a retaliatory
motive); *Grayer*, 2011 U.S. Dist. LEXIS 113118, at **39-40 (dismissing plaintiff's retaliation
claim for failure to provide any "basis for concluding that all – or any – of the actors knew of her
EEOC charge or had a motive to retaliate against her because of it."); *EEOC v. Burlington
Northern Santa Fe R.R.*, 2013 U.S. Dist. LEXIS 49504, at *27-28 (D. Kan. Apr. 5, 2013) (citing to
cases showing courts "routinely granting motions to dismiss" for failing to plead causation prong
of prima facie case).

Because Plaintiff has failed to allege any facts that "plausibly give rise to an entitlement to relief" or amount to anything "more than an unadorned, the-defendant-unlawfully-harmed-me accusation," *Iqbal*, 556 U.S. at 678, Count I of his Complaint must be dismissed.

## CONCLUSION

For the reasons set forth above, Defendants respectfully request that the Court dismiss with prejudice Plaintiff's Complaint in its entirety.

DATED this 4th day of September, 2013.

Respectfully submitted,


      */s/ Connie N. Bertram*
Connie N. Bertram
VA Bar No. 31713
Guy Brenner, *pro hac vice motion pending*
Attorneys for Defendants
1001 Pennsylvania Avenue, N.W.
Suite 400 South
Washington, D.C.  20004
Telephone: (202) 416-6800
Facsimile: (202) 416-6899
cbertram@proskauer.com
gbrenner@proskauer.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 4th day of September, 2013, I will electronically file the

foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of

such filing (NEF) to the following individual:

> James P. Magner, Esq.
> 108-E South Street, SE
> Market Station
> Leesburg, VA 20175
> jmagner@candalaw.com

*   /s/ Connie N. Bertram
Connie N. Bertram
