


**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

DANIEL KOLAKOWSKI,

Plaintiff,

-v-

GORDON LYNCH, ET AL.,

Defendants.

Civil Action No. 1-13-cv-1072

**ORDER**

This matter comes before the Court on Defendants' Motion to Dismiss or, In the Alternative, for Summary Judgment. (Dkt. No. 4). The Court heard argument on the motion from both parties on October 25, 2013. For the reasons stated below, as well as those stated in open court, and for good cause shown, the Defendant's motion is GRANTED.

## I. Background

This case arises out of the relationship between Daniel Kolakowski and his former employer, MITRE Corporation ("MITRE"). MITRE is a nonprofit technical advisor to a number of military, national security, and intelligence agencies. After resigning from MITRE, Kolakowski filed an employment discrimination charge with the Equal Employment Opportunity Commission ("EEOC") alleging he had been harassed because of his Polish ancestry. On December 15, 2011 Kolakowski and MITRE signed a mediation settlement agreement resolving the EEOC charge. *See* Mediation Settlement Agreement, Dkt. 1-1. Under the settlement MITRE agreed to not discriminate or retaliate against Kolakowski for filing the charge. *Id.* at ¶ 4.

At some point after reaching his EEOC settlement with MITRE and obtaining employment elsewhere, Kolakowski decided to apply for a job with the Federal Bureau of

Investigation ("FBI"). As part of that application process Kolakowski signed a Standard Form 86-1 authorizing the FBI to investigate his background. That authorization allowed former employers to release information about Kolakowski to the FBI regardless of any previous agreement to the contrary. As part of its background investigation of Kolakowski's employment history the FBI conducted interviews with Gordon Lynch, Cyndy Rubin, and Robert Roche, all of whom are MITRE employees who had worked in a supervisory position over Kolakowski. It is these interviews which form the basis of Kolakowski's complaint.

Kolakowski alleges that Lynch, Rubin, and Roche made derogatory and false statements about him during their FBI interviews. Purportedly the three stated, among other things, that Kolakowski took excessive days off of work, exaggerated how much work he did, had lied about his wife having cancer, and generally was untruthful. *See, e.g.*, Dkt. No. 1-1, ¶¶ 15-25. Based on these representations the FBI refused to hire Kolakowski. This led Kolakowski to file suit in the Circuit Court for Fairfax County against Lynch, Rubin, Roche, and MITRE (collectively "the Defendants") claiming breach of contract and defamation. The case came to this Court after the Defendants filed an unopposed Notice of Removal pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. The Defendants then filed the Motion to Dismiss or, In the Alternative, for Summary Judgment currently before the Court.

## II. Standard of Review

The court agrees with the Defendants that their motion should be treated as a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *See* Dkt. No. 10 at 3 n.1. Such a motion tests the legal sufficiency of the complaint. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). In reviewing a Rule 12(b)(6) motion to dismiss the Court must accept as true all well-pleaded allegations and read the factual allegations in the light most favorable to Kolakowski. *Id.* To

survive the motion, a complaint "must contain sufficient factual matter [. . .] to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The complaint must not only allege but also "show" the Plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679.

**III. Analysis**

In Count I of his complaint, Kolakowski claims that MITRE is liable for breach of contract for having violated the terms of the EEOC mediation settlement agreement. Kolakowski seeks further relief against Lynch, Rubin, and Roche for the allegedly defamatory statements they made during their FBI interviews. Despite the various defendants and multiple counts in his complaint, all of Kolakowski's claims can be summarized as follows: (i) Kolakowski entered into an agreement with MITRE, (ii) under that agreement MITRE agreed to not retaliate against Kolakowski for filing his EEOC charge, and (iii) the statements MITRE made through Kolakowski's former supervisors to the FBI during its background investigation into Kolakowski amounted to defamation and retaliation.[1]

The Defendants argue that their statements to the FBI are protected by absolute immunity and thus Kolakowski's complaint must be dismissed. In support of this proposition they point to *Mangold v. Analytic Serv., Inc.*, 77 F.3d 1442 (4th Cir. 1996). In *Mangold* the Fourth Circuit sought to answer "whether absolute immunity shields a government contractor from liability arising from statements made in response to government investigators during an official investigation." *Id.* at 1444. The case arose when an Air Force colonel, Mangold, sued a government contractor for defamation. The defamation claim was based on negative information the government contractor had provided to the Air Force during an investigation into alleged

[1] Clause 7(D) of the agreement also provided that MITRE would thereafter "provide a neutral reference with regard to [Kolakowski's] previous employment." *See* Dkt. No. 1-1 at ¶ 7. Neither party raised this clause in any of their pleadings.

wrongdoing by Mangold. In deciding the case, the Fourth Circuit outlined a balancing test for when to apply absolute immunity in similar circumstances. That test asked courts to determine "the extent that the public benefits obtained by granting immunity outweigh its costs." *Id.* at 1446-7. As applied to the facts in *Mangold*, the Fourth Circuit held that a government contractor receives absolute immunity "only insofar as necessary to shield statements and information, whether truthful or not, given by a government contractor and its employees *in response to queries* by government investigators engaged in an official investigation." *Id.* at 1449 (emphasis in the original). The Fourth Circuit found the colonel's claims were barred under this standard. Courts in this District have since reached identical results in similar situations. *See, e.g.*, *Twigg v. Triple Canopy, Inc.*, 2010 WL 2245511 (E.D.Va. June 2, 2010) (citing *Mangold* in finding that a defense contractor was immune from a defamation claim based on responses the contractor provided to an official investigation by the United States Department of State).

Kolakowski correctly points out that the rule in *Mangold* is not boundless. It is, however, particularly appropriate here given the Plaintiff's claims. It is beyond dispute that MITRE is a government contractor. Likewise Kolakowski himself alleges that the Defendants were responding to a query by government investigators. The only remaining question therefore is whether the FBI query was part of an "official investigation."

Kolakowski argues that the FBI's questioning was merely a routine employment inquiry. In support Kolakowski points to *Spence v. NCI Information Sys., Inc.*, 2009 WL 524739 (D.Md. Feb. 27 2009). Contrary to Kolakowski's representations, *Spence* did not actually decide whether or not a routine employment inquiry was subject to *Mangold* immunity. *Id.* at *6. The Defendants counter by stressing the role background investigations play in the country's ability to protect its national security interests. In support of this contention they point to the recent

incidents involving Edward Snowden and Aaron Alexis, the Navy Yard shooter, both of whom were government contractors. Despite their urging, the Court need not analyze this comparison to determine whether or not the Defendants are entitled to immunity under *Mangold.*

It is clear that the FBI's inquiry into Kolakowski's former employment with a government contractor was "an official investigation" since it was an official investigation conducted by an official government agency. Moreover, the FBI's website describes the Standard Form 86—which Kowalski signed, thus allowing the FBI to interview the Defendants—as "a standard background investigation form used by the entire U.S. Intelligence Community." *See* "Background Investigation" description by FBI, http://www.fbijobs.gov/54.asp (last visited Nov. 4, 2013). Because the Defendants are government contractors who were responding to official inquiries *Mangold* applies and provides the Defendants with an absolute immunity defense to the charges of defamation and retaliation. Since Kolakowski's breach of contract claim is entirely based on this Court finding the Defendants defamed and retaliated against him, it likewise fails.[2]

## IV. Conclusion

For the reasons stated above, as well as those stated in open court, and for good cause shown, it is hereby **ORDERED** that Defendants' Motion to Dismiss (Dkt. No. 4) is **GRANTED.** Plaintiff's complaint is therefore dismissed with prejudice.

November 5, 2013
Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge

[2] Though neither party addresses this issue specifically, Kolakowski's breach of contract claims would likely also be barred by the doctrine of waiver since he voluntarily released the FBI and the Defendants to share information about him when he signed Standard Form 86. *See generally Baumann v. Capozio*, 269 Va. 356, 360 (2005) ("waiver is 'the voluntary, intentional abandonment of a known legal right, advantage, or privilege.'" *citing Fox v. Deese*, 234 Va. 412, 425 (1987))).